UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALYSSA FLEXER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SMARTFOODS, INC. and PEPSICO, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alyssa Flexer ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants Smartfoods, Inc. and PepsiCo, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to the Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Defendants formulate, manufactures, advertises, and sell Smartfood Popcorn in all of its various varieties (the "Products") throughout the United States, including in New York.

2. Defendants represent to consumers through its packaging that the Products contain "NO ARTIFICIAL COLORS OR FLAVORS" and "NO ARTIFICIAL PRESERVATIVES." Defendants make these claims in order to capitalize on consumers' preference for natural foods that do not contain synthetic ingredients.

3. Unbeknownst to consumers, however, Defendants' claims are false because the Products do contain a synthetic non-natural flavoring and preservative ingredient: maltodextrin.

4. Plaintiff has purchased the Products. Now, on behalf of herself and all others similarly situated, she asserts claims for violations of New York General Business Law §§ 349

1

and 350, and for breach of express warranty.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

6. This Court has personal jurisdiction over Defendants because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

8. Plaintiff Alyssa Flexer is a citizen of New York who resides in Brooklyn, New York. Ms. Flexer has purchased the Products for personal use at various times during the applicable statute of limitations. For example, in or around May, 20025, she purchased Smartfood White Cheddar Popcorn from Ideal Food Basket in Brooklyn for approximately $5.59. In purchasing the Products, Ms. Flexer relied on Defendants' false, misleading, and deceptive marketing of the Products as containing "NO ARTIFICIAL COLORS OR FLAVORS" and "NO ARTIFICIAL PRESERVATIVES." Ms. Flexer understood these representations to mean that the Products did not contain any synthetic flavors or preservatives, but in fact, the Smartfood White Cheddar Popcorn that she purchased contained the synthetic flavoring and preservative ingredient maltodextrin. Had Ms. Flexer known that Defendants' representations were false and misleading, she would not have purchased the Products or would have only been willing to purchase the Products at a lesser price.

9. Defendant Smartfoods, Inc. ("Smartfoods") is a corporation organized under the laws of Delaware with its principal place of business located at Plano, Texas. Smartfoods formulates, advertises, manufactures, and/or sells the Products throughout New York and the United States.

10. Defendant PepsiCo, Inc. ("PepsiCo") is a corporation organized under the laws of Delaware with its principal place of business located in Harrison, New York. Smartfoods is a wholly-owned subsidiary of PepsiCo. Along with Smartfoods, PepsiCo formulates, advertises, manufactures, and/or sells the Products throughout New York and the United States.

## GENERAL ALLEGATIONS

11. Defendants' labeling on the Products states that they contain "NO ARTIFICIAL COLORS OR FLAVORS" and "NO ARTIFICIAL PRESERVATIVES."



3

12. Defendants' labeling and advertising puts forth a straightforward, material message: the Products contain only flavoring and preservative ingredients that are natural.

13. Defendants make these natural claims in an effort to capitalize on the growing market for natural products. Health-conscious consumers are willing to pay a price premium for products labeled and advertised as natural because they believe that such products are safer and/or healthier to consume.

14. But, unfortunately for consumers, the Products do contain an ingredient that is an artificial flavor and preservative: maltodextrin. Maltodextrin is a synthetic flavorant and sugar substitute that Defendants use to sweeten and preserve the Products.

15. Maltodextrin is not found in nature. To produce maltodextrin, acids, enzymes, or acids and enzymes are applied in sequence to a starch slurry to induce partial hydrolysis (saccharification). In other words, the acids or enzymes convert or depolymerize starch to glucose or maltose molecules. Once maltose content is high enough, the acids or enzymes are neutralized, removed or deactivated, and the resulting product is then refined, purified and concentrated. Synthetic chemicals are often used to extract and purify the enzymes used to produce maltodextrin.

16. Given the nature of this manufacturing process, rules proposed by the FDA recognize that maltodextrin is a synthetic ingredient. 72 Fed. Reg. 62149, 62166 (proposed Nov. 2, 2007).

17. Maltodextrin reduces the water content in the Products, thereby inhibiting the growth of bacteria, mold, yeast and fungus. As a result, the Defendants are able to extend the shelf life of the Products. Similarly, Defendants use maltodextrin in the Products to impart a sweet flavor. Accordingly, Defendants use maltodextrin in the Product as both an artificial flavor

4

and an artificial preservative.

18.     Consumption of maltodextrin has been associated with adverse health effects like spikes in blood sugar, gastrointestinal symptoms such as cramping and bloating, and causing intestinal disorders by aiding the bacteria known to hurt the intestine.  Moreover, research has identified several health issues including cancer, Alzheimer's disease, kidney damage, reproduction difficulties, and allergies that can be caused due to maltodextrin produced from genetically modified corn.

19.     Defendants have profited enormously from its false and misleading representations that the Products contain only natural flavoring and preservative ingredients.  The purpose of this action is to require Defendants to change their labeling claims and to provide consumers with monetary relief for its deceptive and misleading product claims.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff seeks to represent a class defined as all persons in the United States who, during the maximum period of time permitted by law, purchased Defendants' Products for personal, family, or household consumption, and not for resale (the "Nationwide Class").

21.     Plaintiff also seeks to represent a subclass defined as all person in New York who purchased the Products (the "New York Subclass") (collectively with the Nationwide Class, the "Classes").

22.     **Numerosity Fed. R. Civ. P. 23(a)(1).**  Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

23. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)).** There is a well-defined community of interest in the questions of law and fact involved in this case. Common questions of law and fact that exist as to all Class members and predominate over questions affecting only individual Class members include, but are not limited to:

   (a) the true nature and presence of synthetic flavoring and preservative ingredients in the Products;

   (b) whether Defendants' marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and misleading;

   (c) whether Plaintiff and members of the Classes have suffered damages as a result of Defendants' actions, and the amount thereof;

   (d) whether Defendants have been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon Defendants by Plaintiff and the Classes; and

   (e) whether Plaintiff and members of the Classes are entitled to attorneys' fees and costs.

24. **Typicality (Fed. R. Civ. P. 23(a)(3)).** The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendants' false and misleading marketing, purchased Defendants' Products, and suffered a loss as a result of those purchases.

25. **Adequacy (Fed. R. Civ. P. 23(a)(4)).** Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

26. **Superiority (Fed. R. Civ. P. 23(b)(3)).** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Even if every member of the Classes could afford to pursue individual litigation, the court system could

not. Individualized litigation would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also increase the delay and expense to all parties and would present the potential for varying, inconsistent, or contradictory judgments—magnifying the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. In contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues would ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSES OF ACTION
## COUNT I

### Violation of the New York General Business Law § 349
### (On behalf of the New York Subclass)

27. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

28. Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass against Defendant.

29. Plaintiff and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

30. Defendants are each a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

31. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

7

32. Defendants made false and misleading statements by marketing the Products as containing "NO ARTIFICIAL COLORS OR FLAVORS" and "NO ARTIFICIAL PRESERVATIVES" when the Products in fact contained both a synthetic flavoring and preservative ingredient.

33. In doing so, Defendants engaged in deceptive acts or practices in violation of GBL § 349.

34. Defendants' deceptive acts or practices were materially misleading. Defendants' conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality of its Products, as discussed throughout.

35. Plaintiff and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendants withheld.

36. Defendants' actions set forth above occurred in the conduct of trade or commerce.

37. The foregoing deceptive acts and practices were directed at consumers.

38. Defendants' misleading conduct concerns widely purchased consumer products and affects the public interest. Defendants' conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendants' conduct is misleading in a material way because they fundamentally misrepresent the production and quality of the Products.

39. Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendants' GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein. As a result, Plaintiff and New York Subclass members have been damaged either in the full amount of the purchase price of the

Products or in the difference in value between the Products as warranted and the Products as actually sold.

40. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendants' unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

### COUNT II

**Violation of the New York General Business Law § 350**
**(On behalf of the New York Subclass)**

41. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

42. Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass against Defendant.

43. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

44. Defendants' labeling and advertisement of the Products was false and misleading in a material way. Specifically, Defendants advertised the Products as containing "NO ARTIFICIAL COLORS OR FLAVORS" and "NO ARTIFICIAL PRESERVATIVES" when the Products in fact contained both a synthetic flavoring and preservative ingredient.

45. This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

46. This misrepresentation has resulted in consumer injury or harm to the public interest.

47. As a result of this misrepresentation, Plaintiff and New York Subclass members

have suffered economic injury because: (i) they would not have purchased the Product had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein. As a result, Plaintiff and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

48. By reason of the foregoing and as a result of Defendants' conduct, Plaintiff and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

## COUNT III

### Breach of Express Warranty
### (On behalf of the Nationwide Class and the New York Subclass)

49. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

50. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

51. Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products contained "NO ARTIFICIAL COLORS OR FLAVORS" and "NO ARTIFICIAL PRESERVATIVES."

52. Defendants' representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Classes.

53. However, the Products do not conform to Defendants' representations and

warranties because the Products contain synthetic flavoring and preservative ingredients. By falsely representing the Products in this way, Defendants breached express warranties.

54. As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and members of the Classes have been injured and harmed in an amount to be proven at trial. Had Plaintiff and members of the Classes known the Products in fact contained a synthetic ingredient, they would not have purchased the Products, or only would have been willing to pay substantially less for them.

55. Prior to filing the initial complaint in this action, Defendants were served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Nationwide Class and the New York Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Nationwide Class and New York Subclass;

(b) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c) For an order finding in favor of Plaintiff, the Nationwide Class, and the New York Subclass on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order enjoining Defendants from continuing the illegal practices detailed herein and compelling Defendants to undertake a corrective advertising

      campaign; and

(h)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury of any and all issues in this action so triable as of right.

Dated: June 30, 2025            **ARISOHN LLC**

                                  By:  */s/ Joshua D. Arisohn*
                                         Joshua D. Arisohn

                              Joshua D. Arisohn
                              94 Blakeslee Rd.
                              Litchfield, CT 06759
                              Telephone: (646) 837-7150
                              Email: josh@arisohnllc.com

                              *Attorney for Plaintiff*